# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| **DAVID JOHNSON, et al.,** | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 25-cv-4210-MDH |
| **BOONE COUNTY,** | ) |
| **MISSOURI, et al.,** | ) |
| *Defendants*. | ) |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS FOSTER, RICHARDSON, O'TOOLE, LIGHT, AUSTIN, VOLNER, FISHER, CASTALDI, AND OBERLE'S MOTION TO DISMISS OR ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS**

1

Plaintiffs submit the following Suggestions in Opposition to Defendants Foster, Richardson, O'Toole, Light, Austin, Volner, Fisher, Castaldi, and Oberle's[1] Motion to Dismiss or Alternatively, for Judgment on the Pleadings, (Docs. 16, 17, 17-1):

I.   **Legal Standards**

Motion to Dismiss – The standard is the same as that set forth in Plaintiffs' Suggestions in Opposition (Doc. 26) to the Institution Defendants' Motion to Dismiss (Doc. 12-22, 12-23). Plaintiffs incorporate that standard as though fully stated herein.

Motion for Judgment on the Pleadings – A motion for judgment on the pleadings is analyzed in the same manner as a 12(b)(6) motion to dismiss. *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912–13 (8th Cir. 2014).

Deliberate Indifference Claims – The standard is the same as that set forth in Plaintiffs' Suggestions in Opposition (Doc. 26) to the Institution Defendants' Motion to Dismiss (Doc. 12-22, 12-23). Plaintiffs incorporate that standard as though fully stated herein.

Qualified Immunity – The standard is the same as that set forth in Plaintiffs' Suggestions in Opposition (Doc. 26) to the Institution Defendants' Motion to Dismiss (Doc. 12-22, 12-23). As such, Plaintiffs incorporate that standard as though fully stated herein.

II.  **Because the pleadings are not closed, the Court must deny the Jailer Defendants' motion for judgment on the pleadings.**

Under Rule 12(c), a party may submit a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."

---

[1] Plaintiffs will refer to these Defendants as the "Jailer Defendants" (and Defendants County, Sheriff, and Reynolds as the "Institution Defendants").

The Jailer Defendants seek judgment on the pleadings. (Doc. 16, 17, 17-1). Specifically, the Jailer Defendants assert that "[t]he pleadings are closed and the facts alleged by the plaintiffs establish, as a matter of law, that the movants did not violate the decedent's constitutional rights, or alternatively, that the movants are entitled to qualified immunity…." (Doc. 16, ¶ 3). The Jailer Defendants are incorrect. The pleadings are not closed. Defendants Boone County, Sheriff, and Reynolds have not filed an answer (only a motion to dismiss (Doc. 12-22) and suggestions in support (Doc. 12-23)).

The pleadings are not even closed with respect to Count II, which also includes claims against Defendant Unknown 1, Defendant Unknown 2, Defendant Unknown 3, Defendant Unknown 4, Defendant Doe 1, Defendant Doe 2, and Defendant Doe 3. (Doc. 1-1, pp. 81–88). Plaintiffs have only recently learned the names of Defendant Unknown 1, Defendant Unknown 2, and Defendant Unknown 3; Defendant Unknown 4 remains unknown (Doc. 1-1, ¶ 47; Doc. 21-2, p. 2). And this is to say nothing of Defendant Doe 1, Defendant Doe 2, and Defendant Doe 3.

Thus, with the pleadings still open, the Jailer Defendants are not entitled to judgment on the pleadings under Rule 12(c). *Fisher v. Corizon Health Care*, No. 2:22-cv-00076-AGF, 2023 U.S. Dist. LEXIS 219487, at *1 n.1 (E.D. Mo. Dec. 11, 2023). As such, the Jailer Defendants motion must be treated as one under Rule 12(b)(6), which this Court should also deny because the Jailer Defendants moved too late.

### III. The Jailer Defendants waived their right to move to dismiss under Rule 12(b)(6).

By filing their answer *before* filing their motion to dismiss under Rule 12(b)(6), the Jailer Defendants have waived their ability to move for dismissal under Rule 12(b)(6) at this time. The Jailer Defendants filed their answer (Doc. 13) on October 29, 2025, before filing their motion for

3

judgment on the pleadings on November 10, 2025. (Doc. 16, 17, 17-1). Rule 12(b) states that a "motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."

Rule 12(h)(2) states that the defense of a "[f]ailure to state a claim upon which relief can be granted, … may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." In their responsive pleading, the Jailers' answer is silent on whether Plaintiffs stated a claim. (Doc. 13). Accordingly, this leaves the Jailer Defendants with the opportunity to raise the defense of a failure to state a claim through a Rule 12(c) motion or at trial. Rule 12(h).

But as discussed, the Jailer Defendants' Rule 12(c) motion is premature because the pleadings are not closed. The Jailer Defendants did not have to file their answer 12 days before filing their motion to dismiss under Rule 12(b)(6), but that's exactly what the Jailer Defendants chose to do. The Jailer Defendants did not have to file their motion for judgment on the pleadings before the other defendants answered and the pleadings were closed, but that's exactly what the Jailer Defendants chose to do. With open pleadings and an untimely defense, this Court should deny the Jailer Defendants' Rule 12(b)(6) motion to dismiss for the failure to state a claim upon which relief can be granted.

### IV. Plaintiffs have adequately pleaded deliberate indifference claims against the individual Jailer Defendants.

Plaintiffs' petition plausibly pleads a claim of deliberate indifference against the Jailer Defendants. The petition (Doc. 1-1) does far more than present mere labels and conclusions or merely a formulaic recitation of the elements of a cause of action. Instead, Plaintiffs' petition lays out in 485 paragraphs and 103 pages how the Jailer Defendants callously watched as a pretrial detainee languished away in urine, feces, and vomit for days leading up to his death.

4

The following—if not more—pleaded paragraphs plausibly demonstrate that Plaintiffs' Decedent was suffering from a serious medical need: 96, 97, 98, 106, 123, 124, 125, 128, 130, 132, 141, 148, 149, 150, 151, 153, 159, 160–64, 168170181–85, 188, 191, 193–98, 204–07, 210, 211, 213–15, 221, 223, 225–28, 230, 232–40, 248, 251, 252, 253, 255, 257, 258, 261, 263, 267–69, 277, 278, 290, 300, 333, 336, 339, 340, 356, 358, 359, 360, 364, 365, 366. (Doc. 1-1). These paragraphs demonstrate that the Jailer Defendants were not confronting a scenario in which a detainee was a little sick or was simply detoxing.

The individual jailer defendants cannot hide behind the ostensible involvement of medical staff or the ostensible medical treatment provided to Plaintiffs' Decedent. At this stage of the proceedings, we cannot know which jailers spoke to which healthcare provider (if at all). To rely on the "medical care" here in itself can plausibly be said to be deliberately indifferent. "To accept Defendants' argument as a basis for dismissal would, effectively, imply that a medical professional who provides *any* treatment cannot be deliberately indifferent. Our precedent says otherwise." *Mitchell v. Saint Louis Cty.*, 160 F.4th 950, 2025 U.S. App. LEXIS 31554 at *13 (8th Cir. 2025) (citing *Dantzler v. Baldwin*, 133 F.4th 833, 847 (8th Cir. 2025) ("Mere proof of medical care is insufficient to disprove deliberate indifference.")).

Even if the individual jailers had spoken with the on-site nurse before every single interaction with Plaintiffs' decedent, it is still plausible that the jailers deliberately disregarded Plaintiffs' Decedents' obvious, worsening distress and symptoms. Regardless of what each jailer might have been told before interacting with Plaintiffs' decedent, each jailer plausibly had a basis to conclude that the medical care was "so ineffective that following them might raise the specter of liability for deliberate indifference …." *Mitchell*, at *15–16 (citing *Rusness v. Becker Cnty.*, 31 F.4th 606, 617 (8th Cir. 2022)). A jury could plausibly find that Defendant ACH and

5

its nurses' provision of care bordered on no treatment at all, and also that it was deliberately indifferent for the jailers to rely on that (non-)treatment in the face of an obvious, serious medical need readily apparent to any layperson.

How many times does a jailer need to see a detainee not moving, languishing in his own vomit, experiencing tremors, and trying to drink an empty jug for several minutes before determining that whatever the medical professionals are doing is not enough to save a man's life? What good is being placed on strict medical observation in a camera cell if the watching jailers do nothing (or are not empowered to do anything)? Plaintiffs' petition is replete with allegations plausibly permitting the inference that each individual Jailer Defendant was actually aware (or must have been aware) of Plaintiffs' Decedent's serious medical needs.

## V. Qualified Immunity does not mandate pre-disclosure and pre-discovery dismissal.

The Jailer Defendants plausibly violated Plaintiffs' Decedents' clearly established constitutional right to be free from deliberate indifference to his serious medical needs. Every reasonable jailer in the Jailer Defendants' respective positions would have understood that Plaintiffs' Decedent did not belong at the Boone County Jail and should have been transferred to a hospital or facility capable of meeting his medical needs. Every reasonable jailer in the Jailer Defendants' respective positions would have understood that Plaintiffs' Decedent was not in a position to refuse medical care. And every reasonable jailer in the Jailer Defendants' respective positions would have understood that Plaintiffs' Decedent was dying before their eyes, and that it was not okay to let him deteriorate while covered in vomit and feces.[2] (Doc. 1-1, ¶¶ 356–66).

---

[2] That so many individual Jailer Defendants did not escalate the situation with respect to Plaintiffs' Decedent is a testament to just how widespread Defendant Sheriff's and Defendant Reynold's unconstitutional policies and customs were. *See* (Doc. 26).

The Jailer Defendants principally rely on the ideas that Plaintiffs' Decedent had been provided (ostensible) medical care during his incarceration and the Jailer Defendants were entitled to rely thereon. All defendants in this case have long been on notice the provision of "some medical care" does not immunize them from deliberate-indifference claims. *Dantzler v. Baldwin*, 133 F.4th 833, 850 (8th Cir. 2025). Plaintiffs are entitled to prove their case "by establishing the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." *Id.* Even if the Jailer Defendants were relying on the opinions of medical staff, it is plausible that the medical staff (also defendants in this case) were giving inadequate care on which the Jailer Defendants were not entitled to rely. *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) (rejecting officer's reliance on a nurse's assessment of an inmate).

The Jailer Defendants are subject to Defendant Sheriff's policy that if a detainee refuses medical treatment, the detainee must be informed of any consequences to their health because of refusal of medical treatment. (Doc. 1-1, ¶ 313). This policy plausibly stems from the medical standard of "informed consent" where "the patient must have the capacity to reason and make judgments, the decision must be made voluntarily and without coercion, and the patient must have a clear understanding of the risks and benefits of the proposed treatment alternatives or nontreatment, along with a full understanding of the nature of the disease and the prognosis." *Cruzan v. Harmon*, 760 S.W.2d 408, 417 (Mo. 1988) (citation omitted). "In the absence of these three elements, neither consent nor refusal can be informed." *Id.*

Plaintiffs' Decedent was never in a position to provide informed consent. (Doc. 1-1, ¶¶ 142, 165, 201, 203, 216, 220, 256). He was regularly unresponsive and unaware that any of the Jailer Defendants were there. (Doc. 1-1, ¶ 186). Many encounters with Plaintiffs' Decedent

lasted minutes or less, far too short to provide and discuss the information necessary to obtain an "informed refusal." (Doc. 1-1, ¶¶ 163, 187, 189, 215).

The Jailer Defendants' qualified immunity defense is premised on the notions that the Jailer Defendants did not have information that the medical staff did not have; that the medical staff was involved in monitoring Plaintiffs' Decedent; and that the medical staff was completely aware of everything that the Jailer Defendants saw. Inherent in this defense is an individual's awareness of the medical orders, medical monitoring, care plan, etc. Also inherent in that defense is that the medical staff was fully informed of everything that the jailers and cell monitors had witnessed (recall that Plaintiffs' Decedent was under strict medical observation). These topics of knowledge are inherently unavailable to Plaintiffs before engaging in litigation discovery. As such, these matters are typically reserved for analysis in connection with a motion for summary judgment. And that is exactly what should happen here given the timing irregularities and waiver issue with the Jailer Defendants' motion (Doc. 16).

Respectfully submitted,

**CARSON & COIL, P.C.**

_/s/ Gabriel E. Harris_
Gabriel E. Harris          66461
Blake L. Markus           61733
515 East High Street | P.O. Box 28
Jefferson City, Missouri 65102
Phone: 573-636-2177
Fax: 573-636-7119
Gabe.H@carsoncoil.com
Blake.M@carsoncoil.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent through the Courts' ECF system on February 2, 2026, to: all parties of record.

_/s/ Gabriel E. Harris_
Gabriel E. Harris

8