IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **DAVID JOHNSON, et al.,** | )<br>) |
| *Plaintiffs*, | )<br>) |
| v. | ) Case No. 25-cv-4210-MDH<br>) |
| **BOONE COUNTY,**<br>**MISSOURI, et al.,** | )<br>)<br>) |
| *Defendants*. | )<br>) |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO**
**DEFENDANTS BOONE COUNTY, SHERIFF CAREY, AND REYNOLDS'S**
<u>**MOTION TO DISMISS**</u>

1

# TABLE OF CONTENTS

**Table of Authorities** ...............................................................................................................4

**Legal Standards** ....................................................................................................................5

**The Court should not dismiss claims against Defendant County, Defendant Sheriff, and Defendant Reynolds, especially before disclosures and discovery take place.** ............................................................................7

**Plaintiffs have adequately pleaded a claim of deliberate indifference based on unconstitutional policies** ...............................................................................11

**Plaintiffs have adequately pleaded a claim of deliberate indifference based on unconstitutional customs** ..............................................................................14

**Plaintiffs have adequately pleaded a claim of deliberate indifference based on an unconstitutional failure to train and supervise** ......................................15

# TABLE OF AUTHORITIES

## Cases

*Allard v. Baldwin*, 779 F.3d 768 (8th Cir. 2015) ........................................................................ 6

*Angarita v. St. Louis Cty.*, 981 F.2d 1537 (8th Cir. 1992) ............................................................ 9

*Barton v. Taber*, 908 F.3d 1119 (8th Cir. 2018) ........................................................................... 6

*Bradford v. Huckabee*, 394 F.3d 1012 (8th Cir. 2005) ................................................................. 7

*Cannon v. Dehner*, 112 F.4th 580 (8th Cir. 2024) ........................................................................ 6

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ................................................................... 9

*City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239 (1983) ........................................ 5

*Corwin v. City of Independence, Mo.*, 829 F.3d 695 (8th Cir. 2016) ........................................... 8

*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588 (8th Cir. 2004) ........................... 10

*Dantzler v. Baldwin*, 133 F.4th 833 (8th Cir. 2025) .......................................................... 6, 7, 13

*Davis v. Buchanan County, Missouri*, 11 F.4th 604 (8th Cir. 2021) ............................................ 6

*Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ................................... 5

*Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605 (8th Cir. 2003) .................... 10, 11

*Dornheim v. Sholes*, 430 F.3d 919 (8th Cir. 2005) ....................................................................... 7

*Hovick v. Patterson*, 37 F.4th 511 (8th Cir. 2022) ....................................................................... 7

*Howard v. Adkison*, 887 F.2d 134 (8th Cir. 1989) ..................................................................... 10

*Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118 (8th Cir. 2005) ................................. 9, 10

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825 (8th Cir. 2013) ............................................. 9

*Leftwich Trustee of Statutory Class of Next of Kin to Leftwich v. County of Dakota*, 9 F.4th 966 (8th Cir. 2021) ............................................................................ 6

*Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012) ........................................................................ 15

*Lombardo v. City of St. Louis*, 38 F.4th 684 (8th Cir. 2022) ........................................................ 7

*Luckert v. Dodge County*, 684 F.3d 808 (8th Cir. 2012) ............................................................... 5

*Marsh v. Phelps Cty.*, 902 F.3d 745 (8th Cir. 2018) ...................................................................... 8

*Mick v. Raines*, 883 F.3d 1075 (8th Cir. 2018) ............................................................................. 8

*Mitchell v. Saint Louis Cty.*, 160 F.4th 950 (8th Cir. 2025) ..................................................... 5, 15

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) .................................... 8

*Russell v. Hennepin Cty.*, 420 F.3d 841 (8th Cir. 2005) ................................................................ 8

*Ryno v. City of Waynesville*, 58 F.4th 995 (8th Cir. 2023) ........................................................... 6

*S.M. v. Lincoln Cty.*, 874 F.3d 581 (8th Cir. 2017) ....................................................................... 9

*Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385 (8th Cir. 2007) .................................................. 9

*Vaughn v. Green County, Ark.*, 438 F.3d 845 (8th Cir. 2006) ...................................................... 6

Statutes

42 U.S.C. § 1983 ............................................................................................................................. 8

Plaintiffs submit the following Suggestions in Opposition to Defendants Boone County, Sheriff Carey, and Reynolds's[1] Motion to Dismiss (Docs. 12-22, 12-23):

## I. Legal Standards

### A. Motion to Dismiss

In reviewing a motion to dismiss, courts "assume the facts alleged in the complaint are true." *Mitchell v. Saint Louis Cty.*, 160 F.4th 950 (8th Cir. 2025) (citation omitted). The only issue is whether Plaintiffs have "stated a claim to relief that is plausible on its face." *Id.* (brackets and citation omitted) (cleaned up). This Court assumes "all factual allegations in the complaint are true" and makes "all reasonable inferences in favor of" Plaintiffs. *Id.* (citation omitted).

### B. Deliberate Indifference Claims

As a pretrial detainee, Plaintiffs' Decedent was entitled to the protections guaranteed by the Due Process Clause of the Fourteenth Amendment and had "at least as great a protection as that afforded convicted prisoners under the Eighth Amendment." *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012) (quotation marks and citations omitted); *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244–45 (1983); *see also Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").

A pretrial detainee's claim of unconstitutional medical care is routinely examined under the same rubric as Eighth Amendment claims for deliberate indifference to a serious medical condition. Therefore, a plaintiff must show that he suffered from an objectively serious medical

---

[1] Plaintiffs will refer to these Defendants as the "Institution Defendants" (and Defendants Foster, Richardson, O'Toole, Light, Austin, Volner, Fisher, Castaldi, and Oberle as the "Jailer Defendants").

condition, that defendants actually knew of a risk to his health, and that they deliberately disregarded it. *Vaughn v. Green County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). A serious medical condition is one that has been diagnosed by a physician or one that is so obvious that a layperson would recognize the necessity of medical attention. *Davis v. Buchanan County, Missouri*, 11 F.4th 604, 623 (8th Cir. 2021).

A defendant acts with deliberate indifference when he recognizes that a substantial risk of harm exists and knows that his conduct is inappropriate in light of that risk. *Id.* (citation omitted); *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (noting the objective and subjective components of a deliberate indifference claim). Negligence or failing to alleviate a risk that an official should have perceived is insufficient to show deliberate indifference. *Leftwich Trustee of Statutory Class of Next of Kin to Leftwich v. County of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021).

"A plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or denied access to medical care." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). A prison official "delaying medical treatment for 'nonmedical reasons' may amount to deliberate indifference." *Dantzler v. Baldwin*, 133 F.4th 833, 847 (8th Cir. 2025) (quoting *Cannon v. Dehner*, 112 F.4th 580, 591 (8th Cir. 2024)).

C. Qualified Immunity

Whether an individual is entitled to qualified immunity depends on whether "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of deprivation." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (citation omitted).

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation omitted). "First, a plaintiff may identify existing circuit precedent involving sufficiently similar facts that squarely governs the situation. *Dantzler*, 133 F.4th at 843 (quoting *Hovick v. Patterson*, 37 F.4th 511, 517 (8th Cir. 2022)) "Second, a plaintiff may point to a robust consensus of cases of persuasive authority establishing that the facts of her case make out a violation of clearly established right." *Id.* "Finally, a plaintiff may show, in rare instances, that a general constitutional rule applies with obvious clarity to the facts at issue and carries the day for her." *Id.* Courts have discretion to decide which prong of a qualified-immunity analysis to address first. *Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022) (citation omitted).

When addressing qualified immunity in a motion to dismiss, the answers to the qualified-immunity analysis are entirely dependent upon what appears in the operative pleading. *See Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) ("A rule 12(b)(6) dismissal based on qualified immunity is appropriate when the immunity is established on the face of the complaint.") (internal quotations and citation omitted). Thus, to prevail on their Motion to Dismiss (Doc. 12-22, 12-23) based on qualified immunity, the Institution Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

**II.** **The Court should not dismiss claims against Defendant County, Defendant Sheriff, and Defendant Reynolds, especially before disclosures and discovery take place**.

Defendants summarily assert that the claims against Defendant County are the same as that against Defendant Sheriff and Defendant Reynolds. But at this stage of the proceedings, it is not so clear. Some actors are the ultimate decisionmaker with respect to certain policies, customs, trainings, or supervision, while other actors serve as the ultimate decisionmaker, e.g.,

with respect to negotiating contractual terms with Defendant County's contracted medical provider Defendant ACH. Moreover, at this stage, there are seven either unidentified or unknown individuals who are also involved. (Doc. 1-1, ¶¶ 36–56). Whether to treat Defendant County as synonymous with Defendant Sheriff and Defendant Reynolds depends on the claims involved.

So what are the claims with respect to the challenged counts? As against the Institution Defendants, Plaintiffs have brought deliberate indifference claims alleging unconstitutional policies at the Boone County Jail (Count III), unconstitutional customs at the Boone County Jail (Count IV), and the failure to train and supervise (Count V). These are all "*Monell*" claims in based on *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

A local governing body (e.g., Defendant County) can be sued directly under 42 U.S.C. § 1983. *See Monell*, 436 U.S. at 690. To prevail, the plaintiff must establish the governmental entity's liability for the alleged conduct, which may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018). Thus, Plaintiffs here can plead *Monell* liability for Defendant County three different ways.

First, there is liability through an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible ... for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs

no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). And when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom" by demonstrating:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can establish municipal liability through a claim of a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Importantly, at the motion to dismiss stage, a plaintiff need not "plead the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003); *see also Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). But "the complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Doe*, 340 F.3d at 614. Supervisory liability will ordinarily not be imposed based upon a "single incident, or a series of isolated incidents." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989). "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe*, 340 F.3d at 614.

Whether Plaintiffs should have sued Defendant County in its official capacity or Defendant Sheriff and Defendant Reynolds in their official capacities will be informed by whether Defendant County would be liable for Defendant Sheriff's enacted policies under *Monell*. Defendant County negotiates the terms of the contract between Defendant County and Defendant ACH with respect to the provision of medical services at the Boone County Jail. (Doc. 1-1, ¶¶ 58–61). Defendant Sheriff and Defendant Reynolds establish, enact, and enforce policies and procedures at the Boone County Jail. (Doc. 1-1, ¶¶ 283–84, 294–95).

Defendant County has nothing to do with setting policies and procedures at the jail, just as Defendant Sheriff and Defendant Reynolds have nothing to do with negotiating the specifics terms of the contract between Defendant County and Defendant ACH. (Doc.1-1, ¶¶ 58–61). Where knowledge and notice are key components of bringing a *Monell* claim—*see Jennings*, at 1122; *see also* Doc. 12-22, p. 2–3—Plaintiffs would be prejudiced by dismissing the actors whose knowledge can be imputed to or provide notice to Defendant County. In other words, Plaintiffs cannot know who the final decisionmaker was with respect to the challenged policies,

10

customs, training, or supervision. Plaintiffs should be permitted to proceed to discovery to allow the development of a sufficient evidentiary record necessary to establish liability.

**III.     Plaintiffs have adequately pleaded a claim of deliberate indifference based on unconstitutional policies.**

The Institution Defendants contend that Plaintiffs have failed to allege the existence of a facially unconstitutional policy or that violations of Decedent's constitutional rights (or his death) resulted from any policies. (Doc. 12-22, p. 2–3). The Institution Defendants also assert that they were not on notice as to the constitutionally defective policies. (Doc. 12-22, p. 2–3). Dismissal is not required because Plaintiffs did not have to "plead the existence of an unconstitutional policy or custom." *Doe*, 340 F.3d at 614. Rather, Plaintiffs needed only to allege "facts which would support the existence of an unconstitutional policy or custom."

Plaintiffs have pleaded exactly that, including allegations with respect to express policies in Doc. 1–1 at ¶¶ 85–89, 92, 93, 133, 134, 141, 147, 148, 154, 155, 283, 284, 290–313, 314–25, 327, 329, 330, 331, 332, 345–50, 355, and 367. A sampling of alleged facts supporting the existence of an unconstitutional policy:

¶ 296: "Defendant Sheriff enacted an express policy stating that Defendant County and Defendant Sheriff will provide standards directing staff as to the procedures governing access to healthcare needs for persons detained in the Boone County Jail."

¶ 305: Defendant County and Defendant Sheriff's stated policy defines:

- *"Deliberate Indifference*: The healthcare provider knows of and disregards an excessive risk to detainee health and safety. The healthcare provider's deprivation of medical care, if aware of the risk, may be an 8th amendment violation;

11

- *Emergency Health Care*: A case is considered serious when a detainee has a serious illness or injury which if left untreated could cause significant risk of permanent disability or death;
- *Serious Medical Need*: A medical need of a detainee, which if left untreated would cause substantial and recurring pain and/or is a significant threat to the detainee's health so that daily activities are adversely affected."

¶ 309: "Defendant County and Defendant Sheriff's stated policy provides that the responsibility for determining whether 'a true medical emergency exists' falls on Boone County Jail staff."

¶ 310: "Defendant County and Defendant Sheriff's stated policy provides that medical staff should be notified only in the case of a "confirmed medical emergency.""

¶ 313: "Defendant County and Defendant Sheriff's stated policy provides that if a detainee refuses medical treatment, the detainee must be informed of any consequences to their health because of refusal of medical treatment."

¶ 324: "Defendant County and Defendant Sheriff have no policies specific to the management of opiate or substance-use withdrawals at the Boone County Jail."

Just those sampled allegations support the existence of an unconstitutional policy (or application). Jailers at the Boone County Jail are provided with the explicit instruction that it is up to the jailer to determine if a "true medical emergency exists" and to not notify medical unless there is a "confirmed medical emergency." But <u>jailers</u> are not qualified to make <u>medical</u> decisions. And the policy describes "deliberate indifference" in terms of a "healthcare provider" only, never jailers. Defendant Sheriff's policies say that only Defendant ACH (and its healthcare providers at the jail) can be deliberately indifferent to a detainee's serious medical needs.

Moreover, Defendant Sheriff's definitions of "emergency medical care" and "serious medical need" are constitutionally problematic. If "emergency medical care" is "the level of care required when a condition is perceived to be imminently life-threatening, is beyond the care of the on-site nurse, or cannot be handled by telephonic consultation with the off-site doctor," (Doc. 1-1, ¶ 306), Defendant Sheriff's policy ignores the constitutional requirement to not be deliberately indifferent to a serious medical need where indifference can occur through delaying access to care or by allowing non life-threatening injuries or conditions to fester or go untreated until the injury or condition develops into lethal complications. *See Dantzler*, 133 F.4th at 843.

Further, the definitions of "emergency health care" and "emergency medical care" undermine the provision of life-saving medical care at the jail. If a jailer is the one who makes the call about whether a detainee's medical situation qualifies as an emergency such that medical staff should be notified (Doc. 1-1, ¶ 309), is the jailer supposed to involve medical staff when there is a level of care that is perceived to be imminently life-threatening (Doc. 1-1, ¶ 306)? Or is it when a detainee has a "serious illness or injury which if left untreated could cause significant risk of permanent disability or death"? (Doc. 1-1, ¶ 305). And again, is the jailer the one making that determination? Yes, according to Defendant Sheriff's policies.

Plaintiffs alleged sufficient facts from which one could reasonably conclude that Defendants County and Sherriff were aware and on notice of the need to have policies concerning the opioid crisis, and specifically the danger posed by incarcerating synthetic opioid users. (Doc. 1-1, ¶¶ 110–22). It strains credulity to believe that Defendant County and Defendant Sheriff, during the height of the fentanyl epidemic, did not know of the existence the heightened risk that detainees withdrawing from fentanyl posed or that opioid withdrawals can be fatal. It strains credulity to believe that Defendant Sheriff was unaware of the need to provide medical

treatment to a detainee before the medical issue becomes *perceptibly* life-threatening. And it strains credulity to believe that Defendant Sheriff or Defendant Reynolds would not know that jailers need clear instruction on handling medical situations, especially where they develop into emergency, potentially lethal complications.

## IV. Plaintiffs have adequately pleaded a claim of deliberate indifference based on unconstitutional customs.

The Institution Defendants contend that Plaintiffs have failed to "allege the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct." (Doc. 12-22, p. 3). They assert that the failure to do so requires dismissal. Plaintiffs disagree.

Dismissal is not required because Plaintiffs did not have to "plead the existence of an unconstitutional policy or custom." *Doe*, 340 F.3d at 614. Rather, Plaintiffs needed only to allege "facts which would support the existence of an unconstitutional policy or custom."

Plaintiffs have pleaded allegations with respect to unconstitutional customs in Doc. 1–1, ¶¶ 85, 86, 92, 93, 133, 134, 141, 147, 148, 154, 155, 283, 284, 290–313, 314–25, 326, 329, 330, 331, 332, 345–50, 355, and 367.

In ¶ 326, Plaintiffs set forth 17 different customs alleged to be occurring at the Boone County Jail with respect to the provision of medical care to detainees. (Doc. 1-1). Plaintiffs have set forth allegations demonstrating the unconstitutional custom of ignoring medical complications or delaying treatment. (Doc. 1-1, ¶¶ 330–33). Plaintiffs have set forth allegations showing that across several days, it was individual jailers (not medical staff) obtaining purported refusals from Plaintiffs' decedent. (Doc. 1-1, ¶¶ 141, 247–48). And Plaintiffs have set forth allegations establishing the reliance on Plaintiffs' Decedents' (purportedly) stated refusals of medical care.

## V. Plaintiffs have adequately pleaded a claim of deliberate indifference based on an unconstitutional failure to train and supervise.

Plaintiffs included allegations in the pleading to plausibly assert a failure to train or supervise. For *Monell* liability on a failure-to-train-or-supervise claim, a plaintiff "must allege that the supervisor "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury." *Mitchell*, 160 F.4th 950, 2025 U.S. App. LEXIS 31554 at *13 (quoting *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)). To establish that a supervisor was deliberately indifferent to or tacitly authorized the unconstitutional acts, a plaintiff "must allege that the supervisor 'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'" *Id.* (quoting *Livers*, 700 F.3d at 356).

Because Plaintiffs have plausibly pleaded that Defendant Sheriff's and Defendant Reynolds's subordinates committed constitutional violations surrounding the deliberate indifference to Plaintiffs' Decedent's serious medical needs, Plaintiffs have satisfied the pleading requirements for a failure-to-train-or-supervise claim. There are no trainings or policies with respect to opioid-withdrawal or attendant complications. (Doc. 1-1, ¶¶ 345–50). Several subordinates flatly ignored an individual wallowing in feces, vomit, and urine for days, only glancing into his cell. (Doc. 1-1, ¶¶ 167, 169, 171, 172, 224, 229, 231, 242, 244). Several subordinates watched Plaintiffs' Decedents in his video-monitored cell as he festered in his own waste for days, convulsing, stumbling, lying face first in his own vomit at times. And this all while Plaintiffs' Decedent was under orders for strict medical observation, and one subordinate had even been warned about Plaintiffs' Decedent. (Doc. 1-1, ¶ 279). This was not a single incident. Plaintiffs' Decedent was not a little bit sick. Numerous individuals detained at the

15

Boone County Jail were aware of Plaintiffs' Decedents' dire situation, this even though the other detainees were in different cell blocks. (Doc. 1-1, ¶¶ 277, 413).

Plaintiffs have adequately pleaded their claims against the Institution Defendants in relation to this egregious treatment of another human being. Plaintiffs ask the Court to deny the Institution Defendants motion to dismiss (Doc. 12-22, 12-23).

Respectfully submitted,

**CARSON & COIL, P.C.**

_____
Gabriel E. Harris         66461
Blake L Markus          61733
515 East High Street | P.O. Box 28
Jefferson City, Missouri 65102
Phone: 573-636-2177
Fax: 573-636-7119
Gabe.H@carsoncoil.com
Blake.M@carsoncoil.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was sent through the Courts' ECF system on February 2, 2026, to: all parties of record.

_____
Gabriel E. Harris